OSBORN
MALEDON

A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona  85012-2793

P.O. Box 36379
Phoenix, Arizona  85067-6379

Telephone        602.640.9000
Facsimile         602.640.9050

1   William J. Maledon, 003670
2   Brett L. Dunkelman, 006740
    OSBORN MALEDON, P.A.
3   2929 North Central Avenue, 21st Floor
    Phoenix, Arizona  85012-2793
4   (602) 640-9000
    E-mail:  wmaledon@omlaw.com
5   E-mail:  bdunkelman@omlaw.com
6
    Of Counsel:
7
8   Larry D. Carlson, *pro hac vice pending*
    Barton E. Showalter, *pro hac vice pending*
9   James W. Bristow, *pro hac vice pending*
    Baker Botts LLP
10  2001 Ross Avenue, Suite 600
11  Dallas, TX  75201-2980
    (214) 953-6500
12
13  Attorneys for Ericsson Inc. and Cingular Wireless LLC

14            IN THE UNITED STATES DISTRICT COURT
15              FOR THE DISTRICT OF ARIZONA
16
    Ericsson Inc. and Cingular Wireless LLC,    )   No.
17                                              )
                      Plaintiffs,               )
18                                              )   **COMPLAINT**
    vs.                                         )
19                                              )
    Freedom Wireless, Inc.,                     )   JURY TRIAL DEMANDED
20                                              )
                      Defendant.                )
21  _____ )
22         As and for their Complaint against Defendant Freedom Wireless, Inc.,
23  Plaintiffs Ericsson Inc. and Cingular Wireless LLC (collectively "Plaintiffs") allege as
24  follows:
25                              **PARTIES**
26
27         1.      Plaintiff Ericsson Inc. ("Ericsson") is a Delaware corporation with its
28  principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

2.      Plaintiff Cingular Wireless LLC ("Cingular") is a Delaware limited liability company with its principal place of business at 5565 Glenridge Connector, Atlanta, GA 30342.

3.      On information and belief, Defendant Freedom Wireless, Inc. ("Freedom Wireless") is a Nevada corporation with its principal place of business at 132 S. Central Ave., Phoenix, Arizona 85004, and is doing business in the State of Arizona.  Freedom Wireless is identified as the assignee of issued United States Patent No. 5,722,067 ("the '067 Patent") and United States Patent No. 6,157,823 ("the '823 Patent"), the subjects of this suit.

## JURISDICTION AND VENUE

4.      This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. § 101, *et seq.*, seeking a declaration that no valid and enforceable claim of United States Patent Numbers 5,722,067 ("the '067 Patent") and 6,157,823 ("the '823 Patent") (collectively, "patents-in-suit") is infringed by Plaintiffs.  Accordingly, subject matter jurisdiction of this Court exists under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a).

5.      Freedom Wireless maintains its principal place of business in the State of Arizona.  Also, Freedom Wireless does business in the State of Arizona.  Accordingly, the District of Arizona possesses personal jurisdiction over Freedom Wireless and venue in the District of Arizona is proper under 28 U.S.C. §§ 1391(b), 1391(c).

## EXISTENCE OF AN ACTUAL CONTROVERSY

6.     Freedom Wireless identifies itself as the owner of the '067 Patent, entitled "Security Cellular Telecommunications System," a copy of which is attached to this Complaint as Exhibit "A."  The '067 Patent was issued by the United States Patent and Trademark Office ("USPTO") on February 24, 1998.  Freedom Wireless also identifies itself as the owner of the '823 Patent, entitled "Security Cellular Telecommunications System," a copy of which is attached to this Complaint as Exhibit "B."  The '823 Patent was issued by the USPTO on December 5, 2000.  The patents-in-suit both concern methods that allow an individual to make cellular calls based on a pre-paid account and monitor his or her usage in real time.

7.     Cingular provides pre-paid wireless services to consumers.  Cingular's platform for providing these services is based on systems or services supplied to Cingular by Ericsson.  Ericsson has certain indemnification obligations to Cingular with respect to such systems or services.

8.     For the reasons set forth more fully in Paragraphs 9 through 16 below, Plaintiffs have a reasonable apprehension that Freedom Wireless will initiate litigation against them asserting a claim that the systems or services supplied to Cingular by Ericsson infringe the patents-in-suit.

9.     Prior to Cingular's use of Ericsson systems or services, Cingular offered a previous generation of pre-paid wireless services based on systems or services supplied to Cingular by Boston Communications Group, Inc. ("BCGI").

10.     Freedom Wireless previously filed a lawsuit against Cingular and BCGI, captioned *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et*

*al.*, case no. 4:00-cv-01129-SBA in the United States District Court for the Northern District of California.  The case was later transferred to the United States District Court for the District of Massachusetts, case no. 00-cv-12234-EFH.  In that lawsuit, Freedom Wireless claimed that Cingular's offering of pre-paid wireless services based on BCGI systems or services infringed upon the patents-in-suit.

11.     After the filing of the lawsuit against Cingular, Freedom Wireless filed two related suits in the United States District Court for the District of Massachusetts against other parties engaged in the provision of pre-paid wireless systems or services, captioned *Freedom Wireless, Inc. v. Boston Communications Group, Inc. and Nextel Communications, Inc.*, case no. 1:05-cv-11061-EFH, and *Freedom Wireless, Inc. v. Boston Communications Group, Inc., et al.*, case no. 1:05-cv-11062-EFH.  Both of these cases also alleged infringement of the patents-in-suit.

12.     The lawsuit against Cingular resulted in a jury verdict and judgment in favor of Freedom Wireless.  Upon appeal, Freedom Wireless, BCGI, and Cingular entered into global settlement negotiations.  Freedom Wireless was aware that Cingular currently offers pre-paid wireless services to consumers implementing systems or services obtained from Ericsson.  During these settlement negotiations, Freedom Wireless and Cingular agreed that the settlement would apply solely to pre-paid wireless systems or services provided by BCGI and not to systems or services of other providers, such as Ericsson.  Freedom Wireless thus carved out of the BCGI/Cingular settlement — and preserved its right to assert — a claim that systems or services provided by Ericsson infringe the patents-in-suit.

13.     During the settlement negotiations, Freedom Wireless requested that BCGI have Cingular enter into a standstill agreement with Freedom Wireless regarding any non-BCGI related claims.  In fact, Freedom Wireless unsuccessfully sought the following agreement: "If Freedom and Cingular are unable to resolve all outstanding disputes by the end of the Prepaid Period, unless otherwise agreed by Freedom and Cingular, all subsequent disputes between Freedom and Cingular shall be resolved by an action filed with the United States District Court for the District of Massachusetts and Freedom and Cingular each submit to the jurisdiction of that Court for the limited purpose of resolving such disputes."

14.     BCGI informed Freedom Wireless that it could not agree to a standstill agreement on behalf of its carriers.  Freedom Wireless, through its counsel, responded that if Cingular did not participate in the standstill agreement, then Freedom Wireless would be ready to proceed with litigation against Cingular.  BCGI then cautioned Cingular that Freedom Wireless had requested the standstill agreement, that the settlement agreement would not cover Cingular's use of Ericsson systems or services, and that Cingular and Ericsson would be subject to a claim by Freedom Wireless for infringement of the patents-in-suit.

15.     The settlement discussions recently resulted in an executed settlement agreement between Freedom Wireless, BCGI, and Cingular.  As BCGI's press release, expressly approved by Freedom Wireless, noted, however, "it does not resolve or settle any claims, disputes or liabilities relating to the use or infringement of the Freedom patents by mobile operators in connection with any prepaid wireless system or service other than services provided by BCGI." *Boston Communications*

*Group, Inc. Signs Definitive Settlement Agreement to End Freedom Wireless Litigation*, BUSINESS WIRE, July 21, 2006, available at DIALOG, File No. 610, attached at Exhibit "C."

16.     In addition to the looming indication that Freedom Wireless is preparing to initiate infringement litigation against Cingular and Ericsson as set forth above, three news articles address Freedom Wireless's intent to sue the Plaintiffs for alleged infringement of the patents-in-suit.  On information and belief, these three news articles were based in part upon information provided by Freedom Wireless.  In a May 20, 2005 press release following the previous jury trial, Bill Price, Freedom Wireless's counsel, stated, "This verdict sends a message to these defendants and any others who have been infringing these patents that Freedom Wireless will pursue its rights to the fullest."  *Jury Awards Freedom Wireless $128 Million against Wireless Telephone Companies for Patent Infringement*, BUSINESS WIRE, May 20, 2005, available at DIALOG, File No. 610, attached at Exhibit "D."  In a September 21, 2005 press release by The Yankee Group, it was reported that the initial jury decision in the suit involving Freedom Wireless and Cingular was "merely the beginning for Freedom Wireless and its lawsuits.  It has already filed suit against Nextel and Alltel, and the May 2005 decision could lead to action against other vendors and service providers, including Ericsson . . . ."  *Yankee Group Reveals Recent Lawsuit Decision Threatens US Prepaid Wireless Market; Sets Precedent for Possible Legal Action against Other Vendors*, BUSINESS WIRE, Sept. 20, 2005, available at DIALOG, File No. 610, attached at Exhibit "E."  Additionally, the Wall Street Journal published an article regarding Freedom Wireless and its role in the litigation.  The article stated that

the founders of Freedom Wireless were in a "lucrative line of work: suing cell phone companies for patent infringement" and had created Freedom Wireless "focusing solely on patent litigation."  William M. Bulkeley, *Aggressive Patent Litigants Pose Growing Threat to Big Business*, WALL ST. J., Sept. 14, 2005, at A1, attached at Exhibit "F."

### INEQUITABLE CONDUCT

17.    Plaintiffs further allege that the patents-in-suit are unenforceable because Freedom Wireless deceptively withheld information from the USPTO that it knew or should have known was material to their patentability.  Freedom Wireless had a duty of candor and good faith in dealing with the USPTO during prosecution of the applications that issued as the patents-in-suit.  Part of this duty of candor and good faith included the duty to disclose all information known to be material to patentability.

18.    Douglas Fougnies, a co-inventor of the patents-in-suit, and Robert von Hellens, the then patent counsel for Freedom Wireless' predecessor, deceptively withheld an August 29, 1994 brochure, entitled "Making Telecommunications More Affordable," created by a company called Cominex along with additional information that they knew described transparent pre-paid wireless services using the same configuration as covered by the patents-in-suit.

19.    Mr. Fougnies and Mr. von Hellens also deceptively withheld material they received regarding Cellular Service Inc.'s reseller switch proposal before the California Public Utilities Proceeding ("CSI proposal").  On May 6, 1996, Mr. Fougnies testified in previous litigation that the incorporation of an intelligent switch

into his invention was revolutionary and novel.  On May 9, 1996, Mr. Fougnies and Mr. von Hellens received information regarding the CSI proposal, particularly with regard to the use of reseller switches related to prepaid cellular services.  Although they received the information regarding CSI's proposed use, they failed to provide the same material information to the USPTO during prosecution of the patents-in-suit.

20.     During the prosecution of the '823 Patent, Dan Harned, a co-inventor of the patents-in-suit, deceptively withheld an article published in <u>Telephony</u> magazine on November 29, 1993, entitled "Managing the Revenue Stream Real-time billing technology can help carriers harness future interactive network services," by David E. Klepp.  The <u>Telephony</u> article invalidates claims of the '823 Patent.  Mr. Harned misled his counsel about the significance and materiality of the article when they were considering whether there was an obligation to disclose it to the USPTO.

21.     Additionally, Mr. Fougnies and Mr. Harned deceptively withheld material information concerning the prepaid cellular service that was on sale by Banana Cellular, Inc. in December 1993.  Based on what they understood about the Banana prepaid cellular service, they knew it was material information that should have been disclosed to the patent office.  Specifically, they knew that Banana was recognizing prepaid cellular calls at a wireless switch using an identifier and forwarding calls to a prepaid service provider.  Furthermore, Mr. Fougnies failed to disclose the patent application that became U.S. Patent No. 5,826,185, invented by Andrew Wise and Ted Rich and assigned to Banana Cellular.  Mr. Fougnies received the patent application in 1998 from Mr. Rich.  He was aware of the similarity of the patent application to claims contained in the patents-in-suit.

22.     During prosecution of the patents at issue, Freedom Wireless knew that the above-described information constituted material references that should have been disclosed to the USPTO.  By failing to disclose this information, Freedom Wireless violated its duty of candor and good faith and committed inequitable conduct, rendering both patents-in-suit unenforceable.

23.     Plaintiffs believe and assert that they do not infringe the patents-in-suit and that the patents-in-suit are invalid and unenforceable.

## REQUEST FOR DECLARATORY JUDGMENT

24.     Plaintiffs incorporate by reference paragraphs 1 through 23 as if fully set forth herein.

25.     Plaintiffs have a reasonable apprehension that Freedom Wireless will initiate litigation asserting a claim that services offered for sale and sold by Cingular that contain or implement systems or services supplied to Cingular by Ericsson infringe both the '067 Patent and the '823 Patent.

26.     By reason of the foregoing facts, a ripe and justiciable controversy exists between the parties regarding whether the patents-in-suit are valid or enforceable, and if so, whether Ericsson and Cingular infringe these patents.

27.     Declaratory relief is necessary and appropriate in this case because the Court's judgment on the issues of patent invalidity, unenforceability, and non-infringement will afford Plaintiffs relief from the uncertainty and controversy surrounding Freedom Wireless's intent to file a patent infringement lawsuit.

28.     Accordingly, the Court is requested to declare that each and every claim of the patents-in-suit is invalid, unenforceable, and not infringed.

29.     Plaintiffs are entitled to an award of costs and expenses, including reasonable attorneys fees, to be assessed against Freedom Wireless in accordance with 35 U.S.C. § 285.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs respectfully request that this Court grant the following relief against Freedom Wireless:

A.     a declaration that all claims of the patents-in-suit are invalid;

B.     a declaration that both Cingular and Ericsson do not infringe any of the claims of the patents-in-suit;

C.     a declaration that all claims of the patents-in-suit are unenforceable;

D.     a declaration that Defendant Freedom Wireless and each of its officers, employees, agents, alter egos, attorneys, and any persons in active concert or participation with them be restrained and enjoined from further prosecuting or initiating any action against Ericsson or Cingular claiming that the patents-in-suit are valid, enforceable, or infringed, or from representing that systems or services of the Plaintiffs infringe the patents-in-suit;

E.     an award to Plaintiffs of their respective costs and expenses, including reasonable attorneys fees, in accordance with the provisions of 35 U.S.C. § 285 or other statutes; and,

F.     an award to Plaintiffs of any other relief, in law and in equity, to which the Court finds Plaintiffs are justly entitled.

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs demand trial by jury for all claims triable by jury pursuant to Fed. R.

3

Civ. P. 38.

4

5

DATED this 8th day of August, 2006.

6

OSBORN MALEDON, P.A.

7

8          By     Brett L. Dunkelman
                   William J. Maledon
9                  Brett L. Dunkelman
                   2929 North Central Avenue, 21st Floor
10                 Phoenix, Arizona  85012-2793

11                 Of Counsel:

12                 Larry D. Carlson
                   Barton E. Showalter
13                 James W. Bristow
                   Baker Botts LLP
14                 2001 Ross Avenue, Suite 600
                   Dallas, TX  75201-2980

15                 Attorneys for Ericsson Inc. and Cingular
                   Wireless LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**CERTIFICATE OF SERVICE**

3

4    ☒       I hereby certify that on August 8, 2006, I electronically transmitted the

5            attached document to the Clerk's Office using the CM/ECF System for

6            filing and transmittal of a Notice of Electronic Filing to the following
            CM/ECF registrants:

7

8                                                  s/Susanne Wedemeyer

9

10   1333058

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28