Mark Deatherage (010208)
mmd@gknet.com
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
(602) 530-8000

Paul F. Ware, P.C. (admitted *pro hac vice*)
pware@goodwinprocter.com
John Kenneth Felter (admitted *pro hac vice*)
kfelter@goodwinprocter.com
Elaine Herrmann Blais (admitted *pro hac vice*)
eblais@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109-2881
(617) 570-1000

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cingular Wireless LLC and Ericsson Inc.,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>Freedom Wireless, Inc.,<br><br>                    Defendant. | No. CV06-1935 PHX JAT<br><br>**MOTION TO DISMISS OF FREEDOM WIRELESS, INC.**<br><br>**ORAL ARGUMENT REQUESTED** |

        Defendant Freedom Wireless, Inc. ("Freedom Wireless") moves this Court,
pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the declaratory judgment Complaint of
Plaintiffs Cingular Wireless LLC ("Cingular") and Ericsson Inc. ("Ericsson")
(collectively "Plaintiffs") for lack of subject matter jurisdiction.

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION

Freedom Wireless is a development and technology company based in Phoenix, Arizona that owns patents on systems and methods for providing prepaid wireless telephone services. Affidavit of Larry L. Day ("Day Aff.") ¶ 3. As the term suggests, a subscriber of prepaid services pays in advance for a pre-determined amount of cellular use, whereas post-paid subscribers are billed periodically, typically monthly, for prior use. *Id.* ¶ 4. Freedom Wireless' patents claim a novel cellular system that enables prepaid services subscribers to both place and receive cellular calls without dialing access codes or using modified telephones. *Id.* ¶ 5. As a result, prepaid services subscribers can now enjoy all the user-friendly services available to post-paid services subscribers. *Id.*

Freedom Wireless submits this Motion to Dismiss because this Court lacks subject matter jurisdiction to decide the merits of Plaintiffs' claims. *See* Fed. R. Civ. P. 12(b)(1). As demonstrated below, there was no "actual controversy" *on the date Plaintiffs filed their Complaint* and, therefore, this Court does not have subject matter jurisdiction under the Declaratory Judgment Act ("Act"). 28 U.S.C. § 2201. Plaintiffs have not and cannot carry their burden of proving that, on that date, they satisfied the first prong of the governing two-part Federal Circuit test that is applied to actions seeking declarations of patent invalidity and/or noninfringement, because no explicit threat or other actions by Freedom Wireless created a reasonable apprehension that Plaintiffs faced an *imminent* patent infringement suit by Freedom Wireless. *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1332-33 (Fed. Cir. 2005).[1]

Plaintiffs rely on allegations asserted in paragraphs (9) through (16) of their Complaint to contend they had "a reasonable apprehension that Freedom Wireless will

---

[1]   Federal Circuit law controls whether an "actual controversy" exists under the Act when the underlying merits of an action involve patent invalidity and/or infringement. *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995).

2

initiate litigation against them asserting a claim that the systems or services supplied to Cingular by Ericsson[2] infringe the patents-in-suit." Complaint ¶ 8.[3] Those allegations fall into two categories: (1) statements about settled patent litigation brought by Freedom Wireless based on *other* infringing systems (Complaint ¶¶ 12-15); and (2) opinions attributed to *third parties* quoted in articles published in 2005, expressing general views that Freedom Wireless *may* enforce its patent rights (Complaint ¶ 16). Even if these allegations were accepted as true, which they should not be, *see infra* 7-8, they are insufficient as a matter of law to support a reasonable apprehension of suit and clearly do not support a reasonable apprehension of imminent suit. Plaintiffs' premature lawsuit is no more than the product of the "nervous state of mind of a possible infringer . . ." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995) (citations omitted).

Moreover, even if there were an "actual controversy," the exercise of declaratory judgment subject matter jurisdiction is discretionary. *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998). This Court should decline to hear Plaintiffs' claims because the underlying purposes of the Act are not served where, as here, Plaintiffs have used the declaratory judgment vehicle merely to engage in forum-shopping. Now apprised of Plaintiffs' hostile intentions, yesterday, Freedom Wireless

---

[2]   In mid-2004, Boston Communications Group, Inc. ("BCGI"), a prepaid wireless services provider, announced that Cingular was migrating its prepaid wireless subscribers off a BCGI system and onto an Ericsson system. Day Aff. ¶ 21. In their Complaint, Plaintiffs state that "Cingular's platform for providing [pre-paid wireless services to consumers] is based on systems or services supplied to Cingular by Ericsson." Complaint ¶ 7. By this action, Cingular and Ericsson seek, among other things, declarations that Freedom Wireless' '067 and '823 patents are invalid and unenforceable and that they do not infringe those patents. Complaint, Prayers for Relief, (A) - (C).

[3]   Although Freedom Wireless does not accept the characterizations of the events described in paragraphs (9) through (11) of the Complaint, they are of no moment for purposes of the instant Motion to Dismiss. The focus in this Motion is on paragraphs (12) through (16) of the Complaint.

1   initiated a patent infringement action against Cingular and Ericsson in the Eastern

2   District of Texas,[4] *Freedom Wireless, Inc. v. Cingular Wireless LLC and Ericsson Inc.*,

3   No. 02-06CV-504-TJW (E.D. Tex.), and contemporaneously commenced a similar

4   lawsuit against Alltel Communications, Inc., Comverse, Inc. and VeriSign, Inc. in the

5   same Court, *Freedom Wireless, Inc. v. Alltel Corporation, Comverse, Inc. and VeriSign,*

6   *Inc.*, No. 02-06CV-505-TJW (E.D. Tex.).  Both actions have been assigned to the same

7   District Judge (Hon. T. John Ward).  They involve not only the '067 and '823 patents,

8   which are the subjects of the instant action, but also Freedom Wireless' '851 patent.

9   The "center of gravity" of these patent infringement cases resides with Judge Ward in

10  the Eastern District of Texas.  Efficient and cost-effective judicial administration

11  dictates that that forum is better suited to handle all the disputes among all the parties.

12  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) (court should consider

13  "practicality and wise judicial administration").

14      Finally, any doubt regarding subject matter jurisdiction should be resolved by

15  dismissing this action.  It would be wasteful for this Court to adjudicate the merits of

16  Plaintiffs' claims, only to find later after appeal that the Federal Circuit ruled that this

17  Court lacked subject matter jurisdiction from the outset.  The Federal Circuit reviews *de*

18  *novo* a district court's determination whether an "actual controversy" exists under the

19  Act, *MedImmune, Inc. v. Centocor, Inc.*, 409, F.3d 1376, 1378 (Fed. Cir. 2005), and

20  does not hesitate to vacate a judgment and remand with instructions to dismiss an action

21  whenever a declaratory judgment plaintiff fails to satisfy the governing Federal Circuit

22  two-step test, *see, e.g., Microchip Tech. Inc. v. The Chamberlain Group, Inc.*, 441 F.3d

23  936, 940-45 (Fed. Cir. 2006).

## BACKGROUND

25      On March 30, 2000, Freedom Wireless commenced an action against BCGI and

27  ---

[4]  It is noteworthy that Ericsson's principal place of business is Plano, Texas
28  (Complaint, ¶ 1), which is located in the Eastern District of Texas.

several wireless carriers, including Cingular, alleging they infringed Freedom Wireless'
'067 and '823 patents.[5]  *Freedom Wireless, Inc. v. Boston Communications Group, Inc.,
et al.*, No. CV-00-12234-EFH (D. Mass.) ("*Freedom Wireless I*").  On May 20, 2005,
after a fifty-one (51) day trial, the jury returned a verdict in favor of Freedom Wireless
and awarded it $128 Million in damages.  (Doc. Nos. 1786-89).  After a bench trial, on
September 1, 2005, the district court ruled that the patents-in-suit are enforceable.
(Doc. No. 1870).[6]

While the bench trial was proceeding, on June 9, 2005, BCGI requested the
district court to refer the parties to a U.S. Magistrate Judge to mediate all their disputes.
(Doc. No. 1808).  On June 13, 2005, the district court suspended the bench trial
"pending the conclusion of the mediation proceeding before" the Magistrate Judge.
(Doc. No. 1812).  Between June 10, 2005 and July 13, 2005, the parties (including
Freedom Wireless and Cingular) met on ten (10) separate days and engaged in
settlement negotiations under the auspices of the Magistrate Judge.  The negotiations
were unsuccessful and the bench trial resumed.  (Doc. No. 1823).  After final judgment
was entered, all parties appealed to the Federal Circuit.[7]

In 2006, while appellate briefing was progressing, BCGI and Freedom Wireless
agreed to revive settlement discussions.  Day Aff. ¶ 13.  BCGI stated that it was
interested in reaching a "global settlement" of all three pending cases involving BCGI-

---

[5]  Freedom Wireless filed two additional patent infringement actions against BCGI and
several other wireless carriers that used one or more BCGI systems.  *Freedom Wireless,
Inc. v. Boston Communications Group, Inc. and Nextel Communications, Inc.*, No. 05-
CV-11061 (D. Mass.) ("*Nextel*"), and *Freedom Wireless, Inc. v. Boston
Communications Group, Inc., et al.*, No. 05-CV-11062 (D. Mass.) ("*Alltel*").  All three
actions were based only on the '067 and '823 patents and BCGI was the only prepaid
wireless service provider named as a defendant.

[6]  Docket entries in *Freedom Wireless I* are referenced as "Doc. No."

[7]  Freedom Wireless appealed two pre-trial orders concerning the dismissal of claims
against one wireless carrier defendant and an order granting a motion as a matter of law
of no willful infringement filed by defendant wireless carriers.  (Doc. No. 1910).

based systems (*Freedom Wireless I*, *Nextel* and *Alltel*).  *Id.*  BCGI served as a conduit between Freedom Wireless and the wireless carrier defendants and, as a result, Freedom Wireless never communicated directly with representatives of the wireless carrier defendants and had only direct contact with BCGI representatives during the 2006 settlement discussions.  *Id.* ¶ 14; Affidavit of Robert A. Pressman ("Pressman Aff.") ¶ 5.  The only persons who negotiated on behalf of Freedom Wireless were its President, Larry L. Day, and one of its outside counsel, Robert Pressman.  Day Aff. ¶ 15; Pressman Aff. ¶ 4.  All parties (including Cingular) agreed that all settlement communications would be confidential and inadmissible pursuant to Fed. R. Evid. 408 and would not be used for any purpose.  Day Aff. ¶ 16; Pressman Aff. ¶ 6.

On July 21, 2006, the parties reached a Master Settlement Agreement settling *Freedom Wireless I*, *Nextel* and *Alltel.*  The parties agreed that, as part of the Agreement, Freedom Wireless would only release its patent infringement claims based on defendant wireless carriers' (including Cingular) use of BCGI-based systems.  Day Aff. ¶ 19.  The Agreement was conditioned on, among other things, the district court ordering vacatur of the final judgment and several orders entered in *Freedom Wireless I*. (Doc. Nos. 2035 and 2036).  Upon joint motion of all parties, on October 12, 2006, the district court entered the requested Order.  (Doc. No. 2039).

On August 8, 2006, only two (2) weeks after the Master Settlement Agreement was executed, Cingular and Ericsson filed this action.  However, Plaintiffs delayed serving the Complaint on Freedom Wireless until after BCGI and defendant wireless carriers (including Cingular) consummated the settlement by making settlement payments to Freedom Wireless totaling $87 Million on October 13, 2006.  *Id.* ¶ 24. Literally within hours after the settlement payments were made, yet almost two (2) months after the Complaint was filed, Plaintiffs finally served Freedom Wireless with the Complaint.  *Id.*

**ARGUMENT**

**I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION.**

    **A.     There Was No "Actual Controversy."**

A district court has declaratory judgment jurisdiction only if a case presents an "actual controversy." 28 U.S.C. § 2201.[8] A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) questioning subject matter jurisdiction can be based on a facial and/or factual challenge to a complaint. *Cedars-Sinai Med. Center v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993). Freedom Wireless mounts both types of challenges. As explained *supra* 11, Freedom Wireless disputes the factual bases upon which Plaintiffs asserted declaratory judgment jurisdiction. But, even if all jurisdictional allegations were taken as true, there still was no "actual controversy" on the date Plaintiffs filed their Complaint.

Once challenged, no presumption of truthfulness attaches to Plaintiffs' jurisdictional allegations, "and the existence of disputed material facts" does not preclude this Court from "evaluating for itself the merits of [the] jurisdictional claims." *Qwest Corp. v. City of Globe,* 237 F. Supp. 2d 1115, 1116-17 (D. Ariz. 2002) (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (internal quotations and citations omitted)); *Gibbs v. Buck*, 307 U.S. 66, 72 (1939) (court may look beyond jurisdictional allegations and consider evidence to determine whether subject matter jurisdiction exists). The burden of proving subject matter jurisdiction rests solely on

---

[8]  "In a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The "case or controversy" requirement of Article III of the United States Constitution and the Declaratory Judgment Act are co-extensive. *Teva Pharms.*, 395 F.3d at 1340. "[T]he purpose of [a] declaratory [judgment] action is to permit a threatened party to resolve its potential liability, but only when the relationship has progressed to an *actual controversy*, as required by Article III of the Constitution." *Phillips Plastics Corp.* 57 F.3d at 1053 (emphasis added).

1  Cingular and Ericsson.  Because Freedom Wireless "denie[s] the factual allegations that

2  allegedly support the existence of a case or controversy," Plaintiffs "must prove the

3  existence of facts underlying such allegations."  *Jervis B. Webb Co. v. S. Sys., Inc.*, 742

4  F.2d 1388, 1399 (Fed. Cir. 1984).[9]

5       **B**.     **There Was No "Reasonable Apprehension" of Imminent Suit.**

6       Plaintiffs must prove by admissible evidence that an explicit threat or other

7  actions by Freedom Wireless created an objectively reasonable apprehension of an

8  *imminent* patent infringement suit.  *Teva Pharms.*, 395 F.3d at 1339; *True Center Gate*

9  *Leasing, Inc. v. Sonoran Gate, L.L.C.,* 402 F. Supp. 2d 1093, 1097 (D. Ariz. 2005).  The

10 burden is squarely on Plaintiffs to prove such an apprehension existed on the date they

11 filed their Complaint.  *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed.

12 Cir. 1998) (burden on plaintiffs); *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc*., 846

13 F.2d 731, 736 (Fed. Cir. 1988) (citations omitted) (date complaint filed); *MedImmune*,

14 409 F.3d at 1381 (same).

15      Here, Plaintiffs have not and cannot satisfy this jurisdictional prerequisite

16 because they have not and cannot show:

17      •   words or conduct **by the patentee**, *BP Chem. Ltd  v. Union Carbide Corp*,
           4 F.3d 975, 978 (Fed. Cir. 1993) (inquiry looks to patentee's conduct, *i.e.*,
18          "an explicit threat or other action by the patentee");

19      •   creating an **objectively reasonable apprehension** , *BP Chem.* 4 F.3d at
           979 ("it is the objective words and actions of the patentee that are
20          controlling");
21
22      •   of **imminent suit**, *Teva Pharms.*, 395 F.3d at 1333 ("In order for this case
           to be one fit for judicial review, [declaratory judgment plaintiff] must be
23

24  _____

[9]  Evidence proffered to support jurisdictional allegations must be otherwise
25  admissible.  *Cf. Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181-82 (9th
    Cir. 1988) (evidence in affidavits supporting motion to dismiss must be admissible);
26  *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (Fed. R. Civ.
    P. 56 provides guidelines for considering evidence outside pleadings on Rule 12(b)(1)
27  motion).

28
                                      8

able to demonstrate that it has a reasonable apprehension of imminent suit.");

- against the **_specific declaratory judgment plaintiff_**, _Capo, Inc. v. Dioptics Med. Prods._, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (standard is whether patentee "would be reasonably expected to enforce the patent _against the declaratory plaintiff_") (emphasis added).

Plaintiffs do not contend there was an express charge of infringement by Freedom Wireless.  To demonstrate an objectively reasonable apprehension of suit "by subtler conduct," Plaintiffs must show "conduct [that] rises to a level sufficient to indicate an intent" on the part of Freedom Wireless to initiate an imminent infringement action against Plaintiffs.  _Shell Oil Co. v. Amoco Corp._, 970 F.2d 885, 887 (Fed. Cir. 1992) (emphasis added); _Arrowhead Indus._, 846 F.2d at 735 (in absence of explicit threat, court considers totality of circumstances).

Here, the totality of the circumstances demonstrates, at most, that:

- Freedom Wireless previously filed patent infringement actions against BCGI-based systems, and all parties to those actions (including Cingular) consummated a Master Settlement Agreement providing a release of all BCGI-based systems claims;

- during settlement negotiations, Freedom Wireless expressed its intention _not_ to sue Cingular by proposing a "standstill agreement";

- over a year before Plaintiffs filed this action, Freedom Wireless' trial counsel opined that Freedom Wireless would generally enforce its patent rights; and

- over a year before Plaintiffs filed this action, _third parties_ opined that Freedom Wireless would generally enforce its patent rights.

Viewed separately or in combination, these "facts" do not come close to establishing that, _on the date the Complaint was filed_, Plaintiffs had an objectively reasonable apprehension that Freedom Wireless would imminently commence a patent infringement action against them.

### 1.    BCGI-Litigation and Master Settlement Agreement.

Controlling patent declaratory judgment law makes clear that the fact that

9

1   Freedom Wireless and Cingular (and others) were involved in now settled patent

2   litigation over BCGI-based systems does *not* give rise to a reasonable apprehension of

3   imminent suit over Ericsson-based systems.  *See, e.g., Teva Pharms.*, 395 F.3d at 1333

4   (patentee aggressively asserting patent rights against other alleged infringers does not

5   create reasonable apprehension of imminent litigation); *Teva Pharms. v. Novartis*, 2005

6   U.S. Dist. LEXIS 38649, * 8 (D.N.J. Dec. 12, 2005) (reasonable apprehension cannot be

7   based on prior litigation between parties; "although filing a suit may be another logical

8   step, there is no indication in this case that such a suit is in fact imminent"), *app.*

9   *pending*.  This is especially true here because all prior actions involved BCGI-based

10  systems, while this case involves prepaid wireless systems provided by a different

11  wireless services provider (Ericsson).  *Apotex, Inc. v. Pfizer, Inc.*, 385 F. Supp. 2d 187,

12  194 (S.D.N.Y. 2005) (no reasonable apprehension where patentee sued on different

13  technologies); *Eon Labs, Inc. v. Pfizer Inc.,* 2005 U.S. Dist. LEXIS 14680, *8 (S.D.N.Y.

14  July 19, 2005) (prior lawsuit between parties concerning unrelated drug does not give

15  rise to reasonable apprehension).  The additional obvious fact that Cingular was

16  released from Freedom Wireless' claims arising from BCGI-based systems extinguishes

17  any possible apprehension based on the prior litigation.

18              2.     **"Standstill Agreement."**

19        Plaintiffs focus their reasonable apprehension allegations on a "standstill

20  agreement" that appeared in a draft settlement agreement.  *See* Complaint ¶ ¶13, 14. [10]

21

22  _____

    [10]   In apparent violation of the parties' explicit agreement that all communications

23  made during settlement negotiations would be confidential and would not be used for

    any purpose, Day Aff. ¶ 16; Pressman Aff. ¶ 6, Cingular purports to summarize

24  settlement discussions between Freedom Wireless and BCGI representatives.  Even if

    those conversations occurred, they are inadmissible.  "[S]tatements made during the

25  course of settlement negotiations are inadmissible" under F.R. Evid. 408.  *Coogan v.*

26  *Avnet*, 2005 WL 2789311, at *2 (D. Ariz. 2005).  The Federal Circuit has found that

    evidence of settlement negotiations is inadmissible to establish personal jurisdiction,

27  and the same policy underlying Rule 408 should make such negotiations inadmissible to

28  establish subject matter jurisdiction.  *Red Wing Shoe Co. v. Hockerson-Halberstadt,*

                                       10

1    However, the fact that Freedom Wireless allegedly "requested" a "standstill agreement"

2    that was rejected by Cingular, *see id.,* if anything, signals that Freedom Wireless did not

3    intend to sue Cingular.  Plaintiffs' effort to transmute Freedom Wireless' olive branch

4    into a threat of imminent litigation is futile.

5         In any event, Plaintiffs' fundamental allegations are not true.  Plaintiffs' hearsay

6    allegation that Freedom Wireless' (unnamed) "counsel" stated to "BCGI" that "if

7    Cingular did not participate in the standstill agreement, then Freedom Wireless would

8    be ready to proceed with litigation against Cingular," Complaint ¶ 14, is made of whole

9    cloth.  No such statement or any statement to that effect was ever made by anyone

10   representing Freedom Wireless.  Day Aff. ¶ 22; Pressman Aff. ¶ 7.  Because Freedom

11   Wireless disputes this allegation, it is entitled to no weight in a dispute over subject

12   matter jurisdiction.[11]  *Qwest Corp.,* 237 F. Supp. 2d at 1116-17.

13        Even if true and admissible, Plaintiffs' "standstill agreement" allegations cannot

14   foster a reasonable apprehension of imminent suit for at least two reasons.  First, the

15   statements all allegedly occurred during Freedom Wireless' efforts to negotiate a

16   settlement of unrelated cases.  As the Federal Circuit has ruled, "jawboning" during

17   negotiations cannot be the basis for reasonable apprehension of imminent suit.  For

18   example, in *Shell Oil,* the patentee, while negotiating a license, replied "yes" when

19   directly asked by an alleged infringer if it intended to enforce its patent rights.  *Shell*

20   *Oil*, 970 F.2d at 889.  Even when presented with such an explicit statement, the Federal

21   Circuit held that there was no reasonable apprehension of suit because the exchange

22

23   *Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).  Thus, the alleged statements that Plaintiffs
     rely on to establish subject matter jurisdiction should not even be considered by this

24   Court.  *Cf. Beyene*, 854 F.2d at 1181-82.

25   [11]  Plaintiffs' allegations are conspicuously vague and unreliable.  Plaintiffs never
     allege there ever was any communication between Freedom Wireless and Cingular.

26   Complaint ¶ 14 ("BCGI informed Freedom Wireless"; "Freedom Wireless, through its

27   counsel, responded [to BCGI]"; "BCGI then cautioned Cingular").  Significantly, the
     participants in these alleged exchanges are never identified.

28

occurred during negotiations.  *See also West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1298 (Fed. Cir. 1992) (license negotiations); *Hideki Elecs. v. Lacrosse Tech.*, 2006 U.S. Dist. LEXIS 42296, *12-13 (D. Ore., June 5, 2006) (no reasonable apprehension based on trade show statements); *Nokia Corp. v. Interdigital Communs.*, 2005 U.S. Dist. LEXIS 34899, *10-11 (D. Del., Dec. 21, 2005) (license negotiations).

It is also important to keep in mind that all alleged communications were filtered through BCGI – a party adverse to Freedom Wireless with its own agenda in the settlement negotiations.  Plaintiffs' characterizations of Freedom Wireless' alleged statements are "nothing more than recitation of . . . hearsay comment[s]."  *West Interactive*, 972 F.2d at 1296 (objectively unreasonable for declaratory judgment plaintiff to rely on communication by third party of patentee's alleged statements made at meeting).

Second, BCGI's alleged "words of caution" to Cingular, Complaint ¶ 14, are equally inconsequential as a matter of law.  Only statements or actions *by the patentee* can give rise to a reasonable apprehension of imminent suit under the governing Federal Circuit test.  *BP Chems.*, 4 F.3d at 979 (Fed. Cir. 1998) ("[I]t is the objective words and actions of the patentee that are controlling.").  To hold otherwise would empower strangers to create federal subject matter jurisdiction by fabricating an "actual controversy" between others.  *See Bausch & Lomb, Inc., v. CIBA Corp.*, 39 F. Supp. 2d 271, 274 (W.D.N.Y. 1999) ("Were mere rumors sufficient to give rise to an actual controversy for purposes of §2201(a), the actual controversy requirement would be rendered practically meaningless.").  Suffice it to say, BCGI had no authority to speak or to act on behalf of Freedom Wireless; indeed, BCGI and Freedom Wireless were adversaries in three pending lawsuits and during settlement negotiations.  Day Aff. ¶ 15.

> To create a controversy between plaintiff and the patentee, an agent must have actual or apparent authority to level a charge of infringement on behalf of the patentee.  Without such authority, plaintiff could not apprehend reasonably an infringement suit by the defendant-patentee.  A reasonable

12

apprehension in the plaintiff must be created by the patentee directly or
through his authorized agents . . . . *The patentee should not be subjected to
a declaratory judgment action for charges of infringement which he did not
level himself or allow another to level.*

*Sherman Theaters, Ltd. v. Ahlbrandt,* 607 F. Supp. 939, 943 (D.D.C. 1985) (emphasis

added). *See West Interactive Corp.,* 972 F.2d at 1298 (no reasonable apprehension

where no contact with authorized agent).

### 3.   Scope of Master Settlement Agreement Release.

Plaintiffs correctly allege that the release granted by Freedom Wireless to all

settling defendants was strictly limited to infringement caused by wireless carrier

defendants' use of BCGI-based systems.  Complaint ¶ 15.[12]  Plaintiffs disingenuously

intimate that there was a separate "BCGI/Cingular settlement" and that Freedom

Wireless "carved out" of the Master Settlement Agreement release "a claim that systems

or services provided by Ericsson infringe the patents-in-suit."  Complaint ¶ 12.

There is only one Master Settlement Agreement and, in addition to Freedom

Wireless and BCGI, three (3) wireless carrier defendants are parties, including Cingular.

Day Aff. ¶ 19.  The scope of the release is identical for all three (3) wireless carrier

defendants — no claims based on "any prepaid wireless system or service other than

systems or services provided by BCGI" were released.  *Id.*  It was not only Freedom

Wireless and Cingular that "agreed that the settlement would apply solely to prepaid

wireless systems or services provided by BCGI and not to systems or services of other

providers," Complaint ¶ 12; *all* parties agreed to the same well-defined scope of the

Master Settlement Agreement.  This is completely understandable because that

Agreement settled cases that involved BCGI-based systems.  Ericsson is not even

mentioned in the Agreement.  Day Aff. ¶ 20.  Nor are other prepaid service providers

---

[12]   BCGI's July 21, 2006 press release announcing the Master Settlement Agreement,
which is quoted, in part, in paragraph (15) of the Complaint, was "expressly approved"
not only by Freedom Wireless but also by all settling parties, including Cingular.  Day
Aff. ¶ 17.

used by wireless carrier defendants (*e.g*., Comverse and VeriSign by Alltel).  *Id*.  In short, Cingular's use of Ericsson-based systems is treated no differently than any other wireless carrier defendants' use of other prepaid service providers; that is, none is even mentioned in the Agreement.  To suggest otherwise is misleading.

Plaintiffs' implicit argument that the mutually agreed-upon limited scope of the Master Settlement Agreement and related release somehow amount to conduct *by Freedom Wireless* creating a reasonable apprehension of imminent suit is fanciful.  *See Shell Oil,* 970 F.2d at 888 (patent holder statement during negotiations cannot be basis for charge of infringement; statement "was provoked by [plaintiff]").

In sum, to find declaratory judgment jurisdiction on the facts here would be to disregard both the "reasonable apprehension" and the "imminence" requirements of the Federal Circuit test.  As the Federal Circuit has held, there can be no reasonable apprehension of imminent suit based on a patentee's exercise of its lawful prerogatives.  *Cygnus Therapeutic Sys. v. ALZA Corp.*, 92 F.3d 1153, 1160-61 (Fed. Cir. 1996) *overruled on other grounds; Nobelpharma AB v. Implant Innovations*, 141 F.3d 1059, 1068 (Fed. Cir. 1998), such as suing on the basis of other infringing systems.

### 4.    Third-Party Opinions in "News Articles."

Plaintiffs' reliance on "three news articles" that were published over one (1) year before they filed suit is far-fetched.  Complaint ¶ 16.  None aids their failed efforts to establish subject matter jurisdiction for this declaratory judgment action.

One "news article" quotes from a press release by Freedom Wireless' trial counsel on the day (May 20, 2005) of the $128 Million jury verdict in *Freedom Wireless I* as opining:  "This verdict sends a message to these defendants and any others who have been infringing these patents that Freedom Wireless will pursue its rights to the fullest."  This type of general "message" cannot create a reasonable apprehension of imminent suit in a specific declaratory judgment plaintiff.  *See Shell Oil,* 970 F.2d at 889 (stated intention to enforce patent); *Cygnus Therapeutic Systems* at 1160 (statement at investors' meeting of company's policy regarding enforcement of patents).  Plaintiffs

14

do not allege Freedom Wireless *ever* made *any* statement about whether the Cingular-Ericsson system infringes Freedom Wireless' patents.  (It is interesting, however, to note that Cingular and Ericsson apparently identify with "any others who have been infringing" Freedom Wireless' patents.)

The other two "news articles" are even more remote from Freedom Wireless. One is another press release (September 20, 2005) that expresses the view of a telecommunications trade association (The Yankee Group) that the *Freedom Wireless I* jury verdict "could lead to action against other vendors and service providers, including Ericsson."  No representative of Freedom Wireless ever communicated with any representative of this association prior to this press release.  Day Aff. ¶ 23.  It is inconceivable that Plaintiffs actually believe that a speculative opinion by a trade group should be considered by this Court when determining whether it possesses declaratory judgment jurisdiction.

The last cited "news article" is equally immaterial. Plaintiffs quote from an article in *The Wall Street Journal* (September 14, 2005).  The quotes are not attributed to any representative of Freedom Wireless.  Rather, they are merely the views of the author.  Again, it is impossible to see how this writer's opinions advance Plaintiffs' cause.

These "news articles" cannot support a reasonable apprehension of imminent litigation. They are all remote in time — any "*imminence*" dissipated long ago. *Citizen Elecs. Co. v. Osram GmbH*, 377 F. Supp. 2d 149, 155-56 (D.D.C. 2005) (no declaratory judgment jurisdiction where "relevant events preceded plaintiff's filing of suit by [six] months").  As discussed *supra* 12-13, comments of third parties do not constitute conduct or actions *by the patentee* and cannot give rise to a reasonable apprehension of suit. Neither the persons quoted nor Plaintiffs made any effort to substantiate the views expressed.  Unsupported allegations cannot support declaratory judgment jurisdiction. *Indium Corp of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985). Even if these "news articles" were legally cognizable, they were nothing more than personal expressions of general opinions and reliance on them would be objectively

1  unreasonable.

2  **II.      THIS COURT SHOULD DECLINE TO EXERCISE JURISDICTION.**

3          Even if this Court determines that Plaintiffs have carried their burden to establish

4  declaratory judgment jurisdiction, it should exercise its "unique and substantial

5  discretion" to decline jurisdiction.  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed.

6  Cir. 1996).  Here, the "purposes of the Declaratory Judgment Act and the principles of

7  sound judicial administration" both weigh heavily against this Court accepting subject

8  matter jurisdiction. *Id*. at 813-14.

9          It is clear that Plaintiffs are simply using this declaratory judgment action as a

10  forum-shopping vehicle.  Although Ericsson's principal place of business is located in

11  the Eastern District of Texas, and that Court would be the logical forum for a patent

12  infringement suit initiated by Freedom Wireless against Ericsson, Ericsson (and

13  Cingular) are attempting to pre-empt the forum choice of the "real plaintiff" in any

14  patent infringement action, Freedom Wireless.  It is remarkable that Plaintiffs filed this

15  action only two (2) weeks after the Master Settlement Agreement was executed, then

16  delayed serving their Complaint until the settlement was consummated, and then caused

17  service to be made within hours.  Day Aff. ¶ 24.  Filing a declaratory judgment action as

18  "a 'defensive step'" is a "tactical measure . . . not a purpose the Declaratory Judgment

19  Act was designed to serve."  *EMC*, 89 F.3d at 815.  This Court should not countenance

20  Plaintiffs' misuse of the Act.

21          In addition, principles of sound judicial administration dictate that this Court

22  decline subject matter jurisdiction.  As discussed *supra* 4, Freedom Wireless has

23  commenced two patent infringement actions in the Eastern District of Texas.  Those

24  lawsuits involve not only Cingular and Ericsson and Freedom Wireless' '067 and '823

25  patents, but also three (3) additional parties and an additional patent ('851).  Those cases

26  have been assigned to District Judge Ward.   The "center of gravity" for adjudicating

27  these cases is the Eastern District of Texas.  It would be an avoidable waste of judicial

28  (and the parties') resources to proceed in this Court, only to find out after appeal that

16

1  this Court lacked subject matter jurisdiction; especially when an alternative forum that

2  clearly has personal and subject matter jurisdiction already exists to resolve all the

3  parties' disputes.

4  Moreover, the Eastern District of Texas is particularly well-suited to handle

5  Freedom Wireless' patent infringement cases.  That Court has adopted special rules

6  governing patent infringement actions that not only take into account their many unique

7  features and procedures, but also streamline discovery, claim construction and other

8  pre-trial matters, and promptly set cases for trial.  *See* United States District Court for

9  the Eastern District of Texas Local Rules and Appendixes, Appendix M.  Judge Ward is

10 highly experienced in handling patent cases.  Docket research reveals that, since 1992,

11 Judge Ward has disposed of 112 patent cases.  All these factors argue in favor of

12 dismissing this action and allowing the cases to proceed in the Eastern District of Texas.

13                                   **CONCLUSION**

14 For all the foregoing reasons, Freedom Wireless respectfully requests that this

15 Court dismiss the Complaint because it lacks subject matter jurisdiction to adjudicate

16 Plaintiffs' claims.  Alternatively, Freedom Wireless asks this Court to exercise its

17 discretion to decline declaratory judgment jurisdiction.

18 DATED this first day of December, 2006.

19                                   **GOODWIN PROCTER LLP**

20                                   By:  /s/ John Kenneth Felter
21                                      Paul F. Ware, P.C. (admitted *pro hac vice*)
                                        John Kenneth Felter (admitted *pro hac vice*)
22                                      Elaine Herrmann Blais (admitted *pro hac vice*)
23                                      GOODWIN PROCTER LLP
                                        Exchange Place
24                                      Boston, MA 02109
25                                      kfelter@goodwinprocter.com
                                        (617) 570-1000
26                                      Fax: (617) 523-1231
                                        Attorneys for Defendant
27

28

Copy of the foregoing electronically filed
with the Clerk of District Court
this first day of December, 2006, and
electronically copied to:

William J. Maledon
Brett L. Dunkelman
Osborn Maledon, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona  85012-2793
  and
Larry D. Carlson
Barton E. Showalter
James W. Bristow
Baker Botts, LLP
2001 Ross Avenue, Suite 600
Dallas, Texas  75201-2980
Co-counsel for Plaintiffs

_____
LIBA/1747501.2