**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cingular Wireless LLC and Ericsson Inc., ) | No. CV06-1935 PHX JAT |
| Plaintiffs, ) | **ORDER** |
| vs. ) | |
| Freedom Wireless, Inc., ) | |
| Defendant. ) | |

Pending before the Court is Defendant's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction (Doc. # 29) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

I. BACKGROUND

Defendant Freedom Wireless, Inc. ("Freedom Wireless"), a development and technology company based in Phoenix, Arizona, owns patents on systems and methods for providing prepaid wireless telephone services. Plaintiff Cingular Wireless LLC ("Cingular"), based in Atlanta, Georgia, provides prepaid wireless services to end-user customers using a system supplied by Plaintiff Ericsson, Inc. ("Ericsson"), a company based in Plano, Texas. Before using Ericsson's system, Cingular based its prepaid wireless services on a different system provided by Boston Communications Group, Inc. ("BCGI").

On March 30, 2000, Freedom Wireless commenced a patent action against BCGI and

1 several wireless carriers using the BCGI system, including Cingular, alleging infringement of Freedom Wireless' United States Patents, numbers 5,722,067 ("the '067 Patent") and 6,157,823 ("the '823 Patent") (collectively, "patents-in-suit").  *See Freedom Wireless, Inc. v. Boston Comm. Group, Inc.*, No. CV-00-12234-EFD (D. Mass.) ("*Freedom Wireless I*"). The trial was bifurcated, with the issue of infringement first tried to a jury and the issue of patent enforceability subsequently tried to the court.  The jury returned a verdict in favor of Freedom Wireless on May 20, 2005.  Following unsuccessful mediation during the bench trial, the district court found the patents-in-suit enforceable.  After all parties appealed to the Federal Circuit Court of Appeals, Freedom Wireless and BCGI entered into global settlement negotiations, with BCGI serving as the intermediary between Freedom Wireless and the wireless carrier defendants.  In the resulting settlement agreement, Freedom Wireless released any patent infringement claims based on the wireless carriers' (including Cingular) use of BCGI-based systems.  Further, the judgments entered as a result of both the jury and bench trials were vacated.

Approximately one month after settlement was reached, Plaintiffs Cingular and Ericsson filed the present action for a declaratory judgment that no valid and enforceable claim of the patents-in-suit is infringed by Plaintiffs.  Subsequently, Defendant Freedom Wireless filed an action against Plaintiffs alleging infringement of the patents-in-suit, as well as a third patent referred to as "'851," in the Eastern District of Texas.  Defendant also filed a separate suit against Alltel Communications, Inc., Comverse, Inc. and VeriSign, Inc. in the same court regarding the same patents.  Thereafter, Defendant filed the pending motion to dismiss for lack of subject matter jurisdiction, alleging that no actual controversy existed on the date Plaintiffs filed their Complaint.  Finally, Defendant filed two additional actions against Plaintiff Ericsson and several of its wireless carriers based on the same three patents, both in the Eastern District of Texas. All four actions are assigned to the Honorable T. John Ward.

1  II.     LEGAL STANDARD

2       The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "actual controversy" refers to "cases and controversies" that are justiciable under Article III of the Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). Plaintiffs carry the burden to prove the existence of an actual controversy such that subject matter jurisdiction exists. *Cardinal Chem. Co. v. Morton Int'l Inc.*, 508 U.S. 83, 95 (1993).

    Until 2007, courts used a two-prong "reasonable apprehension" test developed by the Federal Circuit Court of Appeals in patent declaratory judgment actions to determine whether an actual controversy exists. *See Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1330 (Fed. Cir. 2005). Under that test, an actual controversy exists upon evidence of "an explicit threat or other action by the patentee which creates a reasonable apprehension" that the declaratory judgment plaintiff faces an imminent infringement suit and "present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity." *See Teva*, 395 F.3d at 1332.

    However, the Supreme Court, in *MedImmune, Inc. v. Genetech, Inc.*, 127 S.Ct. 764 (2007), rejects the two-prong test used to determine justiciability in patent declaratory judgment actions. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) (finding that the *MedImmune* decision "represents a rejection of our reasonable apprehension of suit test."); *Teva Pharm., Inc. v. Novartis Pharm., Inc.*, 482 F.3d 1330, 1334 (Fed. Cir. 2007) ("*MedImmune*...finds that our declaratory judgment test for non-infringement or invalidity conflicts with [the Court's] precedent") (internal quotations omitted). Instead, the Supreme Court looked to the totality of the circumstances, and emphasized that an Article III dispute "be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of

1  specific relief through a decree of a conclusive character, as distinguished from an opinion
2  advising what the law would be upon a hypothetical state of facts.'" *MedImmune*, 127 S.Ct.
3  at 771 (quoting *Aetna*, 300 U.S. at 240-41); *Novartis*, 482 F.3d at 1336-37. "Basically, the
4  question in each case is whether the facts alleged, under all the circumstances, show that
5  there is a substantial controversy, between parties having adverse legal interests, of sufficient
6  immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 127
7  S.Ct. at 771 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273
8  (1941)). Additionally, the Supreme Court stated that Article III "d[oes] not require, as a
9  prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the
10 farm, so to speak, by taking the violative action" when faced with a genuine threat of
11 enforcement to penalize a private action. *Id.* at 772.

12 Recognizing that *MedImmune* involved a legal relationship between a patent holder
13 and a licensee, the Federal Circuit, in *SanDisk*, nonetheless found the *MedImmune* standard
14 applicable in cases involving no legal relationship. *SanDisk* 480 F.3d at 1380. The *SanDisk*
15 court further stated that Article III jurisdiction exists where the patent holder "takes a position
16 that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal
17 behavior or abandoning" that which it asserts a right to do. *SanDisk*, 480 F.3d at 1381. The
18 *SanDisk* court held "that where a patentee asserts rights under a patent based on [a] certain
19 identified ongoing or planned activity of another party, and where that party contends that
20 it has the right to engage in the accused activity without license," there exists a case or
21 controversy under Article III. *Id.*

22 The *SanDisk* court supported its position by citing, *inter alia*, *IMS Health, Inc. v.*
23 *Vality Tech. Inc.*, 5 F. Supp. 2d 454 (E.D. Pa. 1999). In *IMS Health*, the court upheld
24 declaratory judgment jurisdiction where the defendant "had not indicated it was going to file
25 suit but had taken positions and made demands such that the declaratory judgment plaintiff
26 justifiably believed" a future action might take place. *SanDisk*, 480 F.3d at 1381 (citing *IMS*
27 *Health*, 59 F. Supp. 2d 454 (E.D. Pa. 1999)). Additionally, in a pre-*MedImmune* decision
28

- 4 -

not cited by the *SanDisk* court, but which the Court finds persuasive, the Federal Circuit found that a plaintiff must show "'more than the nervous state of mind of a possible infringer," in order to invoke declaratory judgment jurisdiction, "but does not have to show that the patentee is 'poised on the courthouse steps.'" *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1254-55 (Fed. Cir. 2002) (citing *Phillips Plastics Corp. v. Kato Hatsujuou Kabushiki Kaisha*, 57 F.3d 1051, 1053-54 (Fed. Cir. 1995). In *Vanguard*, a prior lawsuit brought by the defendant against the declaratory judgment plaintiff, based on the same technology, "ha[d] shown a willingness to protect that technology." *Id.* at 1255 (internal quotations omitted).

III.     SUBJECT MATTER JURISDICTION

As the *SanDisk* court instructs, an actual controversy exists when a patent holder takes a position or asserts rights under a patent based on identified activities of another party. Based on the following facts, the Court finds that an actual controversy existed at the time Plaintiffs filed their Complaint. First, Defendant had previously initiated legal action against Plaintiff Cingular regarding use of the patents-in-suit. Such a lawsuit indicates an assertion of rights and a willingness to pursue litigation regarding the patents-in-suit. Second, in 2004, Defendant learned that Plaintiff Cingular had terminated its use of BCGI's prepaid wireless system and moved its subscribers onto a similar but more modern system provided by Plaintiff Ericsson. Third, after the *Freedom Wireless I* jury trial but before the final settlement, Defendant's agent stated in a press release "[t]his verdict sends a message to these defendants and any others who have been infringing on these patents that Freedom Wireless will pursue its rights to the fullest." (Doc.#1 at 6, Exhibit D). Such a statement further supports a general willingness to actively protect Defendant's intellectual property against alleged infringement.[1]

---

[1] Although not dispositive for the purposes of establishing a "case or controversy" in the pending action, the fact that Defendant did sue Plaintiffs for alleged infringement of the patents-in-suit reflects the reasonableness of Plaintiffs' belief that Defendant intended to

- 5 -

The Court finds that the assertion of rights, evidenced through a prior lawsuit between the same parties regarding the same technology, coupled with Defendant's knowledge of the relationship between Plaintiffs, and solidified through the express press release statement indicating an intent to sue alleged patent infringers, presents enough evidence to establish the case or controversy required for declaratory judgment jurisdiction. Plaintiffs' claim relates to existing and documented prepaid wireless patents owned by Defendant, as well as to Plaintiffs' own prepaid wireless system and current business practices for an existing subscriber base. Due to the potential conflict between Defendant's patents and Plaintiffs' business models, the alleged validity or infringement of the patents-in-suit does, in the opinion of this Court, create a "substantial" dispute, particularly relating to Cingular, which depends upon the legality of Ericsson's system in providing services to its subscribers. *See MedImmune*, 127 S.Ct. at 771. The Plaintiffs' own belief that they maintain the right to freely engage in the use of their existing prepaid wireless system completes the test by providing the "adverse legal interests" required. *Id.*

Further, the *SanDisk* court also identifies "case or controversy" as a situation where a plaintiff finds itself in the position of either pursuing arguably illegal behavior or abandoning that which it claims a right to do. *SanDisk*, 480 F.3d at 1381. Here, the juxtaposition of Defendant's prior litigation regarding the same patents-in-suit against BCGI and Cingular, Defendant's knowledge of Cingular's shift to the Ericsson system, and Defendant's public statement expressing intent to sue similarly situated infringers reasonably put the Plaintiffs in the predicament described by the *SanDisk* court. If Plaintiffs continue business as usual, maintaining the existing system of prepaid wireless distribution to customers, they would do so with a looming threat of litigation under the assumption that

---

initiate legal proceedings against them. *See BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) ("Although it is the situation at the time the suit was filed that establishes the existence *vel non* of an actual controversy, subsequent events can reinforce the correctness of the conclusion.").

- 6 -

1  Defendant suspected infringement.  Alternatively, the totality of the circumstances might
2  have compelled Plaintiffs to abandon a prepaid wireless system or distribution strategy into
3  which they had invested significant resources, including technology capital, marketing efforts
4  and customer acquisition.  Summarily, the reasonable belief that Defendant intended to sue
5  Plaintiffs for infringement of the prepaid wireless system patents-in-suit threatens the
6  continuity of Plaintiffs' respective businesses without declaratory judgment relief.  The Court
7  does not believe that in similar circumstances a declaratory judgment plaintiff must wait until
8  the patentee makes an express threat of litigation or initiates an infringement suit to clear the
9  cloud of doubt placed over the plaintiff, particularly when such a threat of litigation places
10 substantial investments at risk and puts end-users in jeopardy of losing stability of service.

## IV.  COURT'S DISCRETION

Defendant alternatively asks the Court to use its discretion and decline to exercise jurisdiction. "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party[.]'" *MedImmune*, 127 S.Ct. at 776 (emphasis in original).  "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  Even if an actual controversy exists, a court may still choose to decline jurisdiction.  *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996) (citing *Public Serv. Comm'n v. Wycoft Co.*, 344 U.S. 237, 241 (1952)).

However, a district court does not enjoy unlimited discretion regarding jurisdiction in declaratory judgment actions.  *Wilton*, 515 U.S. at 289.  For example, a court cannot decline declaratory judgment jurisdiction solely as "a matter of whim or personal disinclination." *EMC*, 89 F.3d at 813 (citation omitted).  Nor can a court decline jurisdiction, without any other reasons, "merely because a parallel patent infringement suit was subsequently filed in another district."  *Id.*  The *EMC* court noted that generally, a court may dismiss a declaratory judgment action "based on a 'reasoned judgment whether the investment of time and resources will be worthwhile.'" *Id.* at 814 (quoting *Serco Servs. Co.,*

*L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).  Although courts generally favor the forum of the first filed action, "considerations of judicial and litigant economy, and the just and effective disposition of disputes" may require otherwise.  *Genetech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993).

The Court first considers the balance of convenience to the litigants.  Defendant maintains its principal place of business in Phoenix, Arizona, which favors litigation in this Court, but Plaintiff Ericsson has its principal place of business in Plano, Texas, favoring adjudication in the Eastern District of Texas.  Additionally, all four of the pending actions in Texas, although filed subsequent to this one, involve the same patents-in-suit, while three of the pending actions involve Plaintiff Ericsson.  Therefore, the other actions in Texas will require the presence of the parties, counsel, witnesses and inventors regardless of this dispute's location, which weighs in favor of discretionary dismissal.

Defendants also request dismissal based on inequitable conduct, stating that Plaintiffs have not met the purpose of the Declaratory Judgment Act.  Because the Court finds appropriate declaratory judgment jurisdiction, not an anticipatory lawsuit, the purpose of the Act has been met.  *See BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993) ("The purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution...without having to await the commencement of legal action by the other side."). Defendant alleges "forum-shopping," but based on a presumption that both parties have made an attempt to position their suits geographically, the Court gives little weight to the parties' efforts to secure a favorable forum.  Defendant also points to Plaintiffs' "inequitable" use of allegedly confidential statements made during *Freedom Wireless I* settlement negotiations in support of the present declaratory judgment action.  However, both parties have referenced such statements, and

continue to dispute their admissibility, so the Court puts little weight into this argument.[2]

Finally, the Court addresses the "principles of sound judicial administration" in determining whether to invoke its discretion. *See EMC*, 89 F.3d at 813. Again, the Court notes the four pending cases before Judge Ward in the Eastern District of Texas, all predicated upon alleged infringement of the patents-in-suit.[3] While Plaintiffs note that various motions to dismiss or transfer are pending in that court, this Court does not have the foresight to judge the outcome of those motions. As it stands, the weight of judicial economy favors adjudication in Texas. The opportunity for inconsistent judgments between the four pending cases weighs on this Court, the risk of which favors discretionary dismissal. Additionally, four lawsuits regarding the same patents and three lawsuits regarding the same system will result in duplicative efforts, both by the courts and the litigants, if maintained in separate districts. The certainty of wasted resources weighs strongly in favor of dismissal. *See Lonza Inc. v. Rohm and Haas, Inc.*, 951 F. Supp. 46, 50 (S.D.N.Y. 1997) ("[T]here is simply no reason why the patent issues in dispute should be litigated in two different fora.").

On balance, the Court finds the weight of the arguments in favor of discretionary dismissal, allowing the present dispute to find resolution in the Eastern District of Texas. Although the purpose of the Declaratory Judgment Act is met, the convenience of litigation remains in favor of the Texas action, and an inconsistent judgment could place the parties in the unfavorable and inefficient position of relitigating the validity or infringement of the

---

[2]The Court declines to decide the admissibility of the statements made during settlement negotiations, since a case or controversy was found without evidence of the disputed statements or the "standstill agreement."

[3]Defendant also references the Eastern District of Texas' adoption of special rules for patent infringement actions, which streamline discovery, claim construction and other pre-trial matters. While any United States District Court, including this one, can afford all parties the timeliness, fairness, justice and competence required to resolve their patent disputes, the Court is persuaded that the Eastern District of Texas' special rules will most efficiently promote sound judicial administration.

- 9 -

1 | patents-in-suit. Principally, the expectation of duplicative efforts and proceedings between
2 | all of the pending actions, if maintained in separate courts, prompts the Court to respectfully
3 | decline the exercise of declaratory judgment jurisdiction.

4 | IV.   CONCLUSION

5 | Based on the foregoing,

6 | **IT IS ORDERED** that Defendant's Motion to Dismiss Complaint for lack of subject
7 | matter jurisdiction (Doc.# 29) is GRANTED.

8 | **IT IS FURTHER ORDERED** that this matter is DISMISSED and the Clerk of the
9 | Court shall enter judgment accordingly.

10 | DATED this 26th day of June, 2007.

_____
James A. Teilborg
United States District Judge